Before State Industrial Board, Respondent.

In the Matter of the Claim of Walter L. Mason, Appellant, for Compensation under the Workmen's Compensation Law, *v.* Schmidts D. Scheffer, Employer, and State Insurance Fund, Insurance Carrier, Respondents.

Third Department, November 15, 1922.

**Workmen's Compensation Law — claimant, required by employer to keep over night and care for money collected, assaulted near his home late at night by man known to him — accident arose out of and in course of employment.**

A claimant who was assaulted late at night at or near the door of his home received an injury arising out of and in the course of his employment, where it appears that it was a part of his duty to make collections in the afternoon and evening and to keep the money so collected over night and care for and protect the same; that the assault was committed by a man known to the claimant, but that it was not generally or commonly known that the claimant carried his employer's money at night, and it was not shown that the assault was made for the purpose of robbery.

Van Kirk, J., and H. T. Kellogg, Acting P. J., dissent, with opinion.

Appeal by the claimant, Walter L. Mason, from a decision of the State Industrial Board, made on the 26th day of September, 1921, disallowing his claim for compensation, and also from a decision made on the 24th day of April, 1922, affirming the former decision.

*Jeremiah F. Connor,* for the appellant.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

Kiley, J.:

Claimant was a clerk or salesman in the confectionery store of his employer in New York city. He also was a collector of moneys owed his employer for goods sold. He had worked fourteen months for this employer and during all of that time made collections for his employer in the latter part of the day; he worked until twelve o'clock midnight for six days of the week; he lived five miles from his place of business; he was required by his employer to keep all moneys collected by him in the latter part of the day and first half of the night (from the evidence, I would say from outside parties) in his possession until next morning before turning them into his employer. This was required by the employer so as to facilitate checking up the accounts to make his income tax returns. The employer so testified. The amounts he collected varied from three dollars to twenty-eight dollars. On the night of February

15, 1920, he left his place of employment at twelve o'clock midnight and reached home at about one o'clock. He had in his possession of his employer's money, that night, three dollars and twenty cents. He was held up in the doorway of his home and shot, causing the loss of his left eye and leaving a scar on the left side of his head. He had seen the man who shot him on two previous occasions in a poolroom in the neighborhood. His assailant had an ice business about three blocks from where the claimant lived. He pleaded guilty and was sent to prison. He was examined there in this case, and said he never knew claimant and did not do the shooting. The accident or assault, the employment and what it constituted, collecting money, keeping it until the following morning for reasons above stated, and that he had the employer's money on his person at the time he was shot, is not denied. The defense is that it was not an accident arising out of and in the course of his employment. The very able brief of counsel for the appellant arrests our attention at the outset, and brings us up against the proposition that if we reverse the decision of the State Industrial Board and hold that the claimant is entitled to compensation, we shall have extended the insurance coverage beyond any limits thus far fixed in this State. To do this we must follow as an express and exact authority *Clifton* v. *Kroger Grocery & Baking Co.* (217 Mich. 462; 187 N. W. Rep. 380), a case which arose under the Workmen's Compensation Law of the State of Michigan. (See Mich. Pub. Acts of 1912, 1st Ex. Sess. No. 10, as amd.; Comp. Laws, Mich. 1915, chap. 101, as amd.) In that case, as in this case, the employee was required to take home and keep moneys he had taken in after banking hours; he resided two miles from the place of business, and while going home after he had closed his place of business he was knocked down and injured by a passing automobile; he was awarded compensation. In that case it was an accident pure and simple, while in this case we are permitted to infer that robbery was the object of the assailant. In that case, as in this, the employee was converted into a " perambulating safety deposit box," and so required to be by the terms of his contract of hiring as testified to by his employer. The court says in the case cited: " The instant case was not a casual or unusual service, incidentally performed for the employer's interest on the employee's initiative, but a regular, imperative, daily duty, in direct obedience to the terms of plaintiff's [claimant's] hiring, and in prompt compliance with a specific order to take the money home with him and there care for it." To the extent that claimant was caring for his employer's money and under his contract with such employer to so do, I think he was in the course of his employment. As to whether it arose out of that employment is the crucial question

here; all of the facts being admitted, at least not denied, the question of law, as we cannot review a question of fact, is, is there any evidence to sustain the adverse decision of the State Industrial Board? The evidence is brief and meager and is briefly recited above. There is no evidence that the course of business of the claimant, so far as carrying the money of his employer home with him for safekeeping or for the convenience of the employer is concerned, was generally or commonly known. If the doctrine laid down in the Michigan case above cited is good law, it was not necessary that those factors appear. The appellant is not aided by the holding in *Spang* v. *Broadway Brewing & Malting Co.* (182 App. Div. 443). In that case the collector was assaulted while in the actual performance of his duty and for the purpose of robbery. *Rosmuth* v. *American Radiator Co.* (201 App. Div. 207) and *Roberts* v. *Newcomb & Co.* (Id. 759) are not available as authorities in favor of the appellant. In both those cases the saving grace is, that the employment of the injured brought them within the " zone of danger." I do not think such principle can be applied here. Claimant was injured at his own door where he had lived for five years. I find no authority in this State decisive of the force of the conditions found here. Claimant was doing the master's business and for his benefit, which was in the course of his employment; he had his employer's money at the time of injury by reason of that employment, and by reason thereof (of the employment) he was injured. It is not what might have been that we are called upon to consider; it is what actually was. He was out late at night and carried the money by reason of that employment. I cannot escape the conclusion that the injury was suffered in course of and arising out of that employment.

I favor the reversal of the decision of the State Industrial Board, with costs against said Board, and that the matter be remitted for consideration in accordance with this opinion.

Hinman and Hasbrouck, JJ., concur; Van Kirk, J., dissents, with an opinion in which H. T. Kellogg, Acting P. J., concurs.

Van Kirk, J. (dissenting):

It seems to me we cannot hold that, because a man, after working hours (claimant's employment was during fixed hours), carries money belonging to his employer, which money he has in the course of his work collected, his employment becomes continuous day and night; and, unless we so hold, how can we hold that the assault arose in the course of the employment? If there were any evidence in the case justifying a finding that the assailant knew claimant was carrying his employer's money and sought to rob him

thereof, we could hold the injuries accidental and incidental to his employment away from the place of business (*Spang* v. *Broadway Brewing & Malting Co.*, 182 App. Div. 443); but there is no such evidence; the evidence is to the contrary. I have not *Clifton* v. *Kroger Grocery & Baking Co.* (217 Mich. 462; 187 N. W. Rep. 380), but from the notes in Mr. Justice KILEY's opinion, it seems to me the holding goes too far. It is commonly known among commercial men that traveling salesmen often are authorized to collect from customers. If simply conveying money of his employer renders the employment continuous, then, even though engaged in his pleasures at the time, any accidental injury, not alone assault to rob, to the traveling salesman so carrying money, would be within the employment.

The decision should be affirmed.

H. T. KELLOGG, Acting P. J., concurs.

Decision reversed, with costs against the State Industrial Board, and matter remitted for further consideration in accordance with the opinion.