Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of JOE ROSMUTH, Respondent, for Compensation under the Workmen's Compensation Law, *v.* AMERICAN RADIATOR COMPANY, Employer, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, May 3, 1922.

Workmen's Compensation Law — injury arising out of and in course of employment — injury to night laborer assaulted and robbed on pay night arose out of his employment — special exposure to peril.

A laborer, who was assaulted and robbed on pay night at about one o'clock, while engaged with a companion in hauling cinders from his employer's plant to a dump about two hundred feet away, is entitled to compensation under the Workmen's Compensation Law, as his injuries arose out of and in the course of his employment.

The fact that the risk may be common to all mankind does not disentitle a workman to compensation if, in the particular case, the risk is accentuated by the incidents of the employment. The question is whether there was a special exposure to peril.

APPEAL by the defendants, American Radiator Company and another, from an award of the State Industrial Board entered in the office of the State Industrial Commissioner on the 11th day of October, 1921.

*William H. Foster,* for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent State Industrial Commission.

*Spitz & Brauberger,* united in brief of Attorney-General, as counsel for the claimant, respondent.

HINMAN, J.:

This is a case of assault and robbery of an employee in the course of his employment, by outside parties. The findings of fact of the Commission are not questioned. We are to determine whether the accident arose out of the employment. The claimant was a laborer engaged in night work. He and his companion were engaged in drawing cinders from the plant to a dump about 200 feet away. They had a small cart and mule which the claimant was driving back from the dump at about one o'clock in the night. His companion was following. Claimant was set upon by three unknown men who assaulted and robbed him and also his companion who went to his assistance.

The State Industrial Board has found that it had been pay night at the plant, knowledge of which was common in the com-

munity and that claimant " sustained his injuries while in the performance of his duty, in a lonely spot, at his employer's plant, where he was brought and whither he had gone by the conditions of his work in his master's service."

The contention is that the accident did not arise out of the employment; that it was not " one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148, 152.) That it was an " accident " from the viewpoint of the employee has been well settled. (*Spang* v. *Broadway Brewing & Malting Co.*, 182 App. Div. 443.) Did it arise out of the employment? The recent current of authority in this State and elsewhere has been to take a broad conception of the term " employment " as used in the Workmen's Compensation Law, not as confined merely to the nature of the work or the particular service of the individual claimant, but as reaching out and embracing all of the conditions, obligations and incidents of the employment. It is not easy to harmonize all of the cases. " Each case must to a certain extent stand alone," as was said by Judge POUND in *Matter of Heitz* v. *Ruppert* (*supra*).

In some cases of assault, the acts of the claimant have been scrutinized and there has been a determination based upon whether the injured employee has stepped outside the scope of his employment to gratify a personal desire to play or to revenge a wrong rather than to serve the master's interest. There the injury was held to have grown out of a situation initiated by the injured employee himself and, therefore, did not arise out of the employment. Those cases are not in point here. (*Griffin* v. *Roberson & Son*, 176 App. Div. 6; *Stillwagon* v. *Callan Brothers, Inc.*, 183 id. 141.)

The case of *Matter of Scholtzhauer* v. *C. & L. Lunch Co.* (233 N. Y. 12) is relied upon by appellant. A colored dishwasher employed at the same restaurant had invited a waitress to go out with him that evening. She declined and stated to another employee that she would not go out with a negro. He became angry at the statement which was repeated to him and shot her while she was engaged in her employment. The court held that it was " during the course of " her employment but did not " arise out of " it. That case is distinguishable from the decision in *Cranney's Case* (232 Mass. 149; 122 N. E. Rep. 266) where a head waiter was killed by a waiter whom he had discharged in the interests of the employer and acting within the scope of his employment. There the killing arose out of the proper discharge of a duty the assailed owed to his employer and not because of any purely personal quarrel with the assailant. In the *Scholtzhauer* case the quarrel was purely a personal

one having no connection with the employment, except that the employment brought the two persons into close association and thus indirectly and remotely was responsible for arousing the social instinct — the yearning of the one for the society of the other after working hours. Her statement of the reason for her refusal of the invitation led proximately to the assault. In that sense she initiated the assault. While the Court of Appeals might have held that the employment of persons of the opposite sexes in association with each other is likely to give rise to such emotions of attachment or repugnance as a logical consequence of such close contact, yet it was too remote a cause. Looking to the ultimate facts, namely, the refused invitation, the statement of the reason and the shooting, which had no direct connection with the work, that court found that they did not constitute a risk " connected with the employment, flowing therefrom as a natural consequence." The thing which constituted the accident, even though it was induced in a remote degree by the joint employment, was not something reasonably to be expected as one of the perils of her service.

In respect to the ultimate facts involved, the *Scholtzhauer* case was distinguishable from *Matter of Leonbruno* v. *Champlain Silk Mills* (229 N. Y. 470), where the claimant while engaged in the performance of his duties was struck by an apple which one of his fellow-servants, a boy, was throwing in sport to another. There the act itself which proximately caused the injury and constituted the accident was held to be a peril reasonably to be apprehended as a factory condition. In that case the Court of Appeals, following the more recent English authorities (*Thom* v. *Sinclair*, L. R. [1917] App. Cas. 127, 142), held to the liberal view that there is coverage where the employee is brought " within the zone of special danger " by reason of his employment.

The question is, did the employment as such proximately contribute to a risk which is common to humanity? If so, there is liability. The weight of recent authority is in favor of this broad interpretation of the statute which considers the employment as including its conditions, obligations and incidents and considers the perils reasonably to be expected therefrom as risks arising out of the employment.

It has found expression in the case of *Matter of Heidemann* v. *American District Telegraph Co.* (230 N. Y. 305), where a night watchman was on duty and was shot accidentally on the street in the early morning by policemen who were in pursuit of burglars; in *Matter of Katz* v. *Kadans & Co.* (232 id. 420) where the claimant was a chauffeur driving a car in New York city and as he halted

on account of a crowd in front of him he was stabbed by an insane man; in *Matter of Verschleiser* v. *Stern & Son* (229 id. 192) where the claimant who had been teased and insulted by fellow-employees resented the insult by kicking another employee and was thereupon injured by that employee; in *Matter of Knocks* v. *Metal Packing Corp.* (231 id. 78), where claimant had called his foreman a liar because the latter told him he was putting too much oil upon the machinery, whereupon the foreman struck him, causing injury; in *Spang* v. *Broadway Brewing & Malting Co.* (182 App. Div. 443) where a collector for a brewery while in the performance of his duties was killed and robbed, the purpose being to secure the money which he had on his person belonging to his employer; in *Slane* v. *Cording & Salzmann* (179 id. 952) where an employee was assaulted and killed by a fellow-employee who had stayed away from work, and the employee assaulted, to whom the other was subordinate, reported his absence resulting in the employer docking the assailant's pay. (See, also, the English cases of *Trim Joint Dis. School* v. *Kelly*, L. R. [1914] App. Cas. 667; *Nisbet* v. *Rayne & Burn*, L. R. [1910] 2 K. B. 689; *Dennis* v. *White & Co.*, L. R. [1917] App. Cas. 479.)

Under this broader conception of employment and its incidents " the test of liability is the relation of  *  *  *  the employment to the risk." (*Leonbruno Case, supra*, 473.) The fact that the risk may be common to all mankind does not disentitle a workman to compensation if in the particular case the risk is accentuated by the incidents of the employment. The question is whether there was a special exposure to the peril. (*Heidemann Case, supra*, 307.) In that case the court called attention to the well-known fact that " crimes of violence flourish under cover of the night and darkness." The fact that the duties of Rosmuth called him to a lonely spot, 200 feet away from the plant after midnight, immediately following pay night which was a matter of common knowledge in the community, furnishes sufficient evidence that the object of the assault was robbery and that " he was brought by the conditions of his work ' within the zone of special danger.' " (*Leonbruno Case, supra*, 472.)

I believe that the incident of the employment of Rosmuth which brought him to the spot where the assault and robbery were more successfully accomplished and thus in a real sense invited, increased his exposure to a risk otherwise common to humanity. Since the employment directly contributed to the risk by added exposure to a common peril, the accident may be said to have arisen out of his employment.

The award should be affirmed.

Award unanimously affirmed, with costs.